UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DANIELLE CLEVELAND and
DOMINIQUE WICKER, as
Co-Administrators of the
ESTATE OF DARNELL WICKER                                       PLAINTIFFS

v.                                              CIVIL ACTION NO. 3:16-CV-00588-CRS

LOUISVILLE METRO GOVERNMENT
d/b/a LOUISVILLE METRO POLICE
DEPARTMENT, *et al*.                                            DEFENDANTS

Memorandum Opinion

I.  Introduction

This matter is before the Court on the joint motion of Defendants Taylor Banks, Beau Gadegaard, and Brian Smith ("the Officers") seeking partial dismissal of the claims under Federal Rule of Civil Procedure 12(b)(6), ECF No. 32. The Officers also jointly moved for a more definite statement of one of the claims under Rule 12(e), ECF No. 33. Plaintiffs Danielle Cleveland and Dominique Wicker (collectively, "Plaintiffs"), as co-administrators of the estate of Darnell Wicker, addressed both motions in a single response, ECF No. 35. The Officers jointly replied, ECF No. 36.

Because these motions involve the same facts and similar issues, the Court will address them together in a single memorandum opinion and order. For the reasons discussed below, the Court will grant the Officers' Rule 12(b)(6) motion for partial dismissal and will deny their Rule 12(e) motion for a more definite statement.

II.     Allegations in the Amended Complaint

Plaintiffs assert that Darnell Wicker was an African American landscaper and handyman. Compl. ¶¶ 11, 14, ECF No. 30. He "could often be found in his neighborhood riding his bicycle down the street, dragging his lawnmower behind, and carting a bucket of hand tools." *Id*. Wicker apparently had difficulty with his hearing. *Id*. ¶ 13. He could only understand people if they stood close to him and spoke "very loudly." *Id*. And when he watched television, he turned the volume up so loudly that other people left the room. *Id*.

Wicker lived with his girlfriend, Anita Jones, at an apartment located at 4509 Broadleaf Drive in Louisville, Kentucky. *Id*. ¶ 15. Wicker's relationship with Jones was volatile. *Id*. ¶ 16. During the time relevant to the complaint, Wicker had been staying out late, which frustrated Jones. *Id*. ¶ 17.

On August 7, 2016, Jones and Wicker spent the evening away from their apartment. *Id*. ¶ 18. Late that night, Wicker returned to their apartment. *Id*. ¶ 19. He arrived before Jones. *Id*. He began cooking French fries. *Id*. ¶ 20. He was still cooking French fries when Jones returned. *Id*. Jones asked Wicker to leave the apartment. *Id*. ¶ 21. Jones then walked outside of the apartment to talk to her adult daughter, Denita, in the apartment's parking lot. *Id*.

While in the parking lot, Denita called 911 and reported that Wicker had kicked in the apartment door and was walking around the area with knives and a saw. *Id*. ¶ 22. Two police cruisers were accordingly dispatched to the apartment complex. *Id*. ¶ 25. Neither Denita nor Jones told Wicker that the police had been called. *Id*. ¶ 24. Wicker carried some of his possessions out of the apartment and set them outside of the apartment's door. *Id*. ¶ 26. He then went back into the apartment. *Id*.

2

At approximately 1:45 A.M., Officer Smith, who is white, arrived at the apartment complex. *Id*. ¶¶ 7, 27. Officer Smith was wearing a black uniform. *Id*. He did not activate his light bar or siren on his police cruiser. *Id*. The apartment complex's parking lot was dark. *Id*.

Officer Smith began talking in the parking lot to Jones and Denita about the situation. *Id*. ¶ 28. As Officer Smith was speaking to Jones and Denita, the door to the apartment opened. *Id*. ¶ 29. Officer Smith began to approach the apartment. *Id*. He walked between two parked cars, came around a stairwell, and stopped more than 20 feet from the apartment door, where Wicker was exiting the apartment. *Id*. ¶ 30. Officer Smith shined his high-powered flashlight directly at Wicker. *Id*. ¶ 31.

At that point, Wicker's bucket of hand tools was directly outside the apartment door. *Id*. ¶ 32. Wicker was holding a pruning saw by the handle in his left hand, which was at his side. *Id*. The pruning saw was pointed towards the ground. *Id*. Wicker stepped onto the welcome mat with his left foot. *Id*. ¶ 33.

As Wicker began stepping onto the welcome mat with his left foot, Officer Smith commanded him to "drop it," referring to the pruning saw. *Id*. ¶ 34. Wicker then placed his right foot also onto the welcome mat, in the direction of his tool bucket, outside the apartment door. *Id*. ¶ 35. Plaintiffs assert that Wicker intended to put the pruning saw in the tool bucket. *Id*.

Moments before Officer Smith began issuing commands to Wicker, Officers Banks and Gadegaard, who are both white, arrived at the apartment complex in their police cruiser. *Id*. ¶¶ 5, 6, 36. Officers Banks and Gadegaard had been disproportionately arresting, citing, and using force against black citizens. *Id*. ¶ 62. Like Officer Smith, they had not activated their light bar or siren on their police cruiser. *Id*. They also were wearing black uniforms. *Id*. Officers Banks and

Gadegaard parked alongside Officer Smith's police cruiser. *Id*. ¶ 38. They exited their police cruiser and ran towards Officer Smith. *Id*.

Officers Banks and Gadegaard ran past Officer Smith as he was issuing commands to Wicker. *Id*. ¶ 39. None of the Officers identified himself to Wicker as being a police officer. *Id*. ¶ 42. Wicker had not raised his pruning saw from his side, lunged toward the Officers, moved suddenly, possessed a knife or gun, or said anything. *Id*. ¶¶ 43–46. He allegedly did not hear the Officers' commands to "drop it," and Officer Smith's flashlight beam had prevented him from seeing the Officers clearly. *Id*. ¶ 47. When Wicker finally planted his left foot on the welcome mat outside the apartment, Officers Banks and Gadegaard opened fire, hitting him. *Id*. ¶ 40.

Wicker collapsed against the apartment building. *Id*. ¶ 50. His pruning saw fell by his side. *Id*. Blood began pooling around him. *Id*. Officers Banks and Gadegaard yelled, "Don't move." They approached Wicker and handcuffed him. *Id*. Officer Gadegaard kicked Wicker's pruning saw away from his body. *Id*. The Officers then called for an ambulance. *Id*.

Plaintiffs say that Wicker experienced severe pain. *Id*. ¶ 51. He was conscious as he lay on the ground handcuffed and bleeding. *Id*. For the following twelve minutes, the Officer waited for the EMS. *Id*. ¶ 52. At one point, one of the Officers noticed that Wicker's physical condition was deteriorating. *Id*. ¶ 53. The Officer radioed for an estimated time of arrival for the EMS. *Id*. The Officers learned that the EMS was still about six miles away. *Id*.

Although the Officers knew that Wicker's condition was deteriorating and that the EMS was still in transit, the Officers left Wicker handcuffed and bleeding. *Id*. ¶ 54. They did not render any other type of assistance. *Id*. Wicker eventually died from his injuries. *See id*. ¶ 69.

Plaintiffs filed the present suit against Officers Smith, Banks, and Gadegaard, as well as against Steve Conrad, the Chief of the Louisville Metro Police Department, and Louisville Metro

Government (collectively, "Defendants"). They assert five causes of action against Defendants. First, they allege under 42 U.S.C. § 1983 that Defendants violated Wicker's constitutional rights, including his Fourteenth Amendment right to receive adequate medical care (Count I). *Id*. ¶¶ 71–73. Second, they claim that Officers Smith, Banks, and Gadegaard caused the wrongful death of Wicker, which resulted in damages that are recoverable under Kentucky Revised Statute § 411.130 and Kentucky Revised Statute § 411.133 (Count II). *Id*. ¶¶ 74–75. Third, Plaintiffs contend that Officers Banks and Gadegaard intentionally, maliciously, and in bad faith applied and threatened to apply unlawful and unnecessary force against Wicker, thereby committing the common law torts of assault and battery (Count III). *Id*. ¶ 76. Fourth, Plaintiffs assert that Officers Banks, Gadegaard, and Smith breached their respective duties of reasonable care to Wicker, causing his injuries and death (Count IV). *Id*. ¶ 77. Fifth and finally, Plaintiffs maintain that the negligence of Louisville Metro Government and Conrad in the hiring, training, and retaining of the Officers was the direct and proximate causes of Wicker's injuries (Count V). *Id*. ¶¶ 78–82. Plaintiffs seek compensatory damages, punitive damages, and attorney fees and costs. *Id*. at 12–13.

III.   <u>Whether Count I Should Be Partially Dismissed</u>

The Officers now argue that the Court should dismiss Count I to the extent that it alleges under 42 U.S.C. § 1983 that they violated Wicker's Fourteenth Amendment right to receive adequate medical care because they are entitled to qualified immunity. Mem. Supp. Mot. Dismiss 4–7, ECF No. 32-1. Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 55 U.S. 544, 570 (2007). A complaint states a

plausible claim for relief when the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept as true legal conclusions or "threadbare recitals of the elements of a cause of action." *Id*. When resolving a motion to dismiss, however, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesch*, 487 F.3d 471, 476 (6th Cir. 2007)).

In the context of § 1983 claims, the affirmative defense of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The determination is thus a two-part inquiry: (1) whether the defendant violated a constitutional right; and (2) whether that right was clearly established. *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). Whether a right was clearly established is a question of law. *Dickerson v. McClellan*, 101 F.3d 1151, 1156–57 (6th Cir. 1996). The Court is not required to undertake this inquiry in sequential order and, instead, may "exercise [its] sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. 223, 236 (2009).

The Officers assert they are entitled to qualified immunity because they did not violate Wicker's constitutional right to receive adequate medical care.[1] Mem. Supp. Mot. Dismiss 4–7, ECF No. 32-1. They explain that they promptly called the EMS and thus were not deliberately

---

[1] They do not appear to dispute that the Fourteenth Amendment right of pretrial detainees to adequate medical care was clearly established. *See* Mem. Supp. Mot. Dismiss 4–7, ECF No. 32-1.

6

indifferent to Wicker's medical needs. *Id*. at 4. Plaintiffs contend, however, that, accepting all factual allegations in the complaint as true, the Officers were deliberately indifferent to Wicker's medical needs in spite of their summoning of the EMS, and thus they are not entitled to qualified immunity. *Id*. at 9. Resp. Opp. Mot. Dismiss 9, ECF No. 35

Government officials may be held liable for violating the Fourteenth Amendment right of pretrial detainees to receive adequate medical care if they act with "deliberate indifference to [the] serious medical needs of those individuals they have apprehended." *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). A plaintiff, to successfully prove deliberate indifference, must (1) "show the existence of a 'sufficiently serious' medical need (the objective component)" and (2) "allege facts that, if true, would demonstrate that the official 'perceived facts from which to infer substantial risk to the [individual], that he did in fact draw the inference, and that he then disregarded that risk' (the subjective component)." *Bell v. Cumberland Cty.*, 665 F. App'x 421 (6th Cir. 2016) (citing *Phillips*, 534 F.3d at 539–40).

An official acts with deliberate indifference if he deliberately denies or delays the detainee's access to medical care. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). In comparison, when an official immediately calls for the paramedics and the paramedics arrive within minutes, he or she does not act with deliberate indifference to the detainee's medical needs. *Rich v. Mayfield Heights*, 955 F.2d 1092, 1098 (6th Cir. 1992); *see also Bell*, 66 F. App'x at 428 (determining that a police officer who, despite being in an incapacitated state, called for medical assistance for a suspect did not act with deliberate indifference to the suspect's medical needs).

In this case, Plaintiffs allege in relevant part that after being shot, Wicker collapsed against the apartment building. Compl. ¶ 50, ECF No. 30. Blood began pooling around him. *Id*. Officers Banks and Gadegaard approached him and handcuffed him. *Id*. The Officers then called for an ambulance. *Id*. The Officers waited for the EMS for twelve minutes. *Id*. ¶ 52. At one point, one of the Officers noticed that Wicker's physical condition was deteriorating. *Id*. ¶ 53. He radioed for an estimated time of arrival for the EMS. *Id*. The Officers learned that the EMS was still about six miles away. *Id*.

Even taking all reasonable inferences in favor of Plaintiffs, these allegations fail to demonstrate that the Officers were deliberately indifferent to Wicker's medical needs. Instead, these allegations indicate that the Officers perceived that Wicker needed medical help, summoned medical help, and followed up on their previous call for medical help. Given that the allegations fail to show that the Officers violated Wicker's Fourteenth Amendment right to receive adequate medical care, the Officers are entitled to qualified immunity on the issue. The Court will accordingly grant their partial motion to dismiss Count I.

IV. <u>Whether the Officers' Motion for a More Definite Statement Should Be Granted</u>

The Officers also request that the Court order under Federal Rule of Civil Procedure 12(e) that Plaintiffs provide a more definite statement of Count IV, which asserts that they "breached their respective duties of reasonable care to Darnell Wicker causing his injuries and death." *Id*. ¶ 77. Rule 12(e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "[A] motion for more definite statement is designed to strike at unintelligibility rather than simple want of detail…. [It] must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to

8

use pretrial devices to fill any possible gaps in detail." *Midgett v. KSP Head Chaplain*, No. 5:11-CV-P132-R, 2012 U.S. Dist. LEXIS 132186, at *4 (W.D. Ky. Sept. 17, 2012) (alterations in original) (citing *Fed. Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 924 (N.D. Ohio 2007)) (internal quotation marks omitted). "Federal courts generally disfavor motions for more definite statements[, and i]n view of the notice pleading standards of Rule 8(a)(2) and the opportunity for extensive pretrial discovery, courts rarely grant such motions." *Id.* (alteration in original). As such, a "Rule 12(e) motion based [only] on the belief that a better affirmative pleading by the opposing party will enable [the movant] to provide a more enlightening or accurate response will be denied." *Thorpe v. Wal-Mart Stores, Inc.*, No. 5:16CV1247, 2016 WL 4098426, at *1 (N.D. Ohio Aug. 2, 2016).

The Officers summarily argue that their motion for a more definite statement should be granted because Count IV lacks sufficient detail. Mem. Supp. Mot. Definite Statement 8, ECF No. 33-1. They request "that Plaintiffs be required to identify the specific actions they contend breached [their] duty of care, so that [they] can decide whether to seek at least a partial dismissal of the Plaintiffs' negligence claims." *Id.* Plaintiffs maintain, however, that Count IV is clear and that the specifics of the claim can be determined in pretrial discovery. Resp. Opp. Mot. Dismiss 12, ECF No. 35.

Given that the Officers' motion for a more definite statement is intended to strike at want of detail, not at vagueness, a Rule 12(e) motion is inappropriate. *See Midgett*, 2012 U.S. Dist. LEXIS 132186, at *4. The details of the allegations in Count IV likely can be determined through discovery. Therefore, the Court declines to grant the Officers' motion for a more definite statement.

IV. Conclusion

The Court will grant the Officers' joint motion to dismiss Count I under Federal Rule of Civil Procedure 12(b)(6). Count I will be dismissed with prejudice to the extent that it alleges that the Officers violated Wicker's Fourteenth Amendment right to receive adequate medical care. The Court will deny the Officers' joint motion for a more definite statement under Federal Rule of Civil Procedure 12(e). An order will be entered in accordance with this memorandum opinion.

April 20, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**